Good morning, your honors. I'd like to reserve your honor two minutes. Two minutes? Okay. Very good. Counsel, may it please the court. Your honors, the district court abused its discretion in admitting the conviction for simple possession of drugs to impeach Mr. Dave. Rule 609 of the Federal Rules of Evidence provides that such a conviction is admitted, quote, if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused, close quote. But in this case, it was introduced as impeachment evidence and the judge had given an opportunity to, if you will, somewhat whitewash it, and your client declined to accept that invitation. Why is that a problem in this case? Well, I'm going to the whitewashing part, the question is, was it, did the court abuse its discretion in admitting a felony conviction? Let's assume that the defendant did choose not, did choose to have the conviction not named or named, let's assume it was his choice. Still, the fact was that the district judge had said that conviction is coming in. So the question is, was that an abuse of discretion, leaving aside that it was possession of drugs? Okay, but if your client gets on the stand and says, I didn't do X, and the government says, yes, you did, and here's the evidence, what's the matter with that? It's impeachment. Well, the question is, was the rule of evidence followed and did the district court abuse its discretion in admitting this particular felony conviction? This was not a conviction for possession with intent to distribute drugs. There's no question that were the conviction possession with intent to distribute drugs, this court has held that that is a conviction that can be used because its probative value is strong. That's what this court has held. Now, conversely, a conviction for simple possession. You think that holding depended on the fact that it was for sale? Are you speaking about Martin Robles? Yes. It didn't depend upon it, but it was a, I don't know if I'd call it holding or dictum, but it was a strong observation by the Court that possession for simple, this Court distinguishes, let me put it this way, this Court from Bramble to Robles distinguishes between convictions for simple possession of drugs and possession with intent to sell or sale of drugs, and properly so. A conviction, as other cases I've cited in my brief point out, and indeed most all the cases that I've cited suggest, possession for simple possession of drugs says very little, if anything, about a defendant's veracity or trustworthiness. Now, it would be one thing if Mr. Dave had gone on the witness stand and said I never possessed drugs in my life. Well, of course, then a prior conviction for simple possession could be used to impeach that statement. I hear your argument. I guess what troubles me about it in this particular case is that if I understand the record correctly, prior to the trial, there was a discussion of this issue with the trial judge. There was. And both sides were trying to decide how to deal with the issue in a way that would not prejudice the fairness of the trial. If I understand the record correctly, the trial judge offered some suggestions on ways in which the issue could be sanitized for these purposes. Yes. And your client declined to accept that. You went ahead in the face of the fact that you knew that this was going to come in. Well, Your Honor, the record's a little bit different. Okay. Correct me, please. The judge made the decision that the conviction was coming in. Mm-hmm. The prior conviction was coming in. The only question was the judge gave the defendant the opportunity. Look, it's either going to come in as a prior felony conviction, period, or it can come in as a prior conviction for possession of drugs. You choose, if that's – I believe that's a fair statement, like you choose. Now, there's nothing in the record where the defendant actually chooses, but by the way it came in, we can assume and I'll concede that he chose what he chose. But the district judge gave him no choice about the conviction itself coming in. So the prior conviction was coming in. Now, the issue here is, was that an abuse of discretion for the judge to say that the prior conviction was coming in? Now, we know that the prior conviction was for simple possession. And in the in limine motion, the judge knew that. And what I'm saying to the Court is that the judge erred and abused his discretion when he let in a prior conviction for simple possession. Regardless of whether the jury knew it was simple possession or not, the judge erred in letting in the prior conviction because this Court has held that a prior or stated as strongly observed that a conviction for simple possession has very weak probative value. And other cases I've cited in the brief hold it the same. Now, Mahone, United States v. Mahone, says, quote, a district court judge, a conviction for possession of drugs, quote, does not relate to defendant's propensity to testify truthfully. Now, the judge said on the contrary. It had substantial, that's his quote, substantial value. That was an error of law. By holding that the conviction had substantial value and credibility, that was an error of law, I submit. And that automatically makes it an abuse of discretion to have let the prior conviction in. If he's made a legal error in analyzing the effect of the prior conviction. So you're saying that the district judge indicated to the jury that this had substantial probative value or that in his ruling in the in limine motion, he still ruled? In his ruling, no. He didn't say that to the jury. He said that in his ruling in the in limine motion, he said that it had substantial value, and that's at Supplemental Excerpt of Record, page 246, lines 22 to 23. Now, the government in its brief simply doesn't acknowledge the difference between convictions for simple possession and convictions for possession with intent to distribute. And yet, though, this Court has done so in Bramble and in Ramirez-Robles. The government, for example, cites in its brief on page 17, United States v. Cordoba for the statement that, quote, prior convictions for drug offenses are probative of veracity. Well, Cordoba was a possession with intent to sell. So the Court's statement that prior convictions for drug offenses are probative of veracity is dictum, if you will, to the extent that it goes beyond a conviction for possession with intent to sell. Now, the Court didn't ---- Do you have any case law that indicates that allowing evidence in with respect to simple possession as opposed to evidence about intent to sell, when both are used for impeachment purposes, is sufficiently grave that it warranted a reversal? Well, I ---- my cases are ---- that I've cited in the brief is that the Court under Cook has to engage in this five-step balancing test. Right. And no, I don't have a Ninth Circuit case holding that we're the ---- I don't have that case holding that this was reversible error. If you will, this is a case of first impression in that sense, but not in the sense that there's a distinction between a conviction for simple possession and a conviction for possession of intent to distribute. The Court has noticed ---- has observed that distinction on several occasions in this circuit. Now, with respect to the Court also, the government, we have a dispute over how to read the record. Before you get to that, Mr. Levine, what about this five-factor test? There's a statutory provision that evidence 609A1 that the probative ---- that the prior conviction would be admissible so long as the probative value outweighs the prejudicial effect. So that says, you know, it's up to the judge to kind of consider these things. Okay. Then we look at the five factors. The first one is impeachment value. If it's going toward impeachment, we're not using it to establish an element of the case, but rather toward impeachment. So that kind of would indicate probably admissible. The time of conviction, it was what, about two years before? Three years, two or three years. That's close time of conviction.  Similarity between the crimes, there's not much in the similarity of the crimes. I might go the other way. Importance of the defendant's testimony, I'm not quite sure of that one. But centrality to the defendant's credibility, it was central. The whole issue here was really he had one story and the victim had another story. Well, I agree with you, but the court didn't. The district court didn't, at least the way I read the record. And I'm just ---- you have the record in front of you. If you look at the supplemental excerpt of record, lines 253, lines 1 through 5, and this is where we have a dispute with the government's characterization of the record, as I read the record, the judge is saying he did not think that credibility, quote, has particular relevance here with this conviction. Now, maybe he misspoke. Maybe he meant to say something else. But all I have is the record. And the record is ---- What page are you on? Supplemental excerpt of record, page 253. 253. Okay. Go ahead. Well, it doesn't have much to do with the ---- Lines 1 through 5. It doesn't have much to do with the elements of the crime with which he was charged. That's true. No, but the issue ---- he's going down the five factors. And one of the factors is the centrality of credibility to the case. Now, the credibility was the issue in this case. It was one-on-one, no scientific evidence. It was he said, she said, diametrically opposed views. If there was any case that credibility was central to, it was this case. Right. But the judge holds, no, as I read it, credibility has no particular relevance here with this conviction. So as ---- again, he made an error of law or at least abused his discretion in that balance. And that was critical. And that's why he abused his discretion. Now, what about the prejudicial effect? The advisory notes to 609 state that, quote, this is the advisory committee notes. Now, in 609, quote, in virtually every case in which a prior conviction is used to impeach the testifying defendant, he faces a unique risk of prejudice. The danger that the conviction would be excluded under 404 will be misused by the jury's propensity evidence despite its introduction solely for impeachment purposes. In other words, once the jury hears that there's a prior conviction, that this man is a felon, this is a close case. This is not an overwhelming case for the government. This is a close case. The jury's out 17 hours, over two days, Your Honor. They don't even reach a verdict on count one. Anything can tip the balance. Now, the last person to testify is the defendant. The first question I'm causing examination, sir, aren't you a felon? Yes. Now, what is the effect of that on the jury? I submit to you it is enormous. Now, I can't prove it, but we know from the advisory committee notes that they think it's enormous. We know from this Court's decision in United States v. Lewis in 1986 that this Court thinks that juries have a tough time when they hear a defendant has a prior felony conviction, whether it's used for impeachment, whether it's used for 404. In other words, the case is over. For all intent and purposes, the case is over. Now, we're talking about a reasonable doubt, one-on-one. He said, she said. She's an admitted liar. She admits she lies all the time. That's on cross-examination. You've got her relative saying she's a liar. You've got the whole thing. Mr. Levine, you wanted two minutes if you want to reserve your time. Yeah. Okay. You were in a pretty good spot. You were doing pretty well. You were doing well. You're on a roll. You're on a roll. On a roll. May it please the Court. Kelly Zusman, appearing on behalf of the United States. With me at counsel table is Mr. Bill Williams. He was the trial lawyer in this case. Your Honors, Mr. Levine is always a tough act to follow, but I'm going to make an attempt here. First off, on the admissibility of the prior conviction for possession of a controlled substance, I think Mr. Levine is suggesting to this Court that if the prior felony conviction is simple possession, that it can never be used for impeachment. And this Court has never gone that far. The district judge here, Judge Jones, carefully considered all of the 609 factors. I think we've got about 20 pages of the transcript in which he goes over painstakingly each of those factors. He considers the probative value, weighs it against the prejudice, and ultimately concludes that it should come in. All of the cases that Mr. Levine has cited that draw a distinction between possession and distribution are 404B cases in which the government was seeking to introduce the prior conviction in its case-in-chief. We didn't do that here. We only sought to use it to impeach his testimony. And if you want a case in which this Court has held that a defendant can be properly impeached with a prior possession of controlled substance conviction, it's United States. It's the 2017 Fed Third 761. That's a Ninth Circuit 2000 case. Ramirez-Robles hit all involved 404B issues. If you'd like, I can go on to the other issues that he raised with this appeal as well. It's your train. Okay. Thank you very much. You can drive it wherever you want. The second issue that he raises is the failure to strike testimony from Mr. Schimmel. Mr. Schimmel was a tribal liaison's counselor. He's the one who observed several concerns that he had about the ---- Red flags. I'm sorry? Red flags. Red flags. That's right. He saw several red flags relative to the victim's behavior at school. He saw that she wasn't eating. He saw that her grades were slipping, that her attendance was going down. This was all in the early spring of 2003. He testified as to everything that he observed about the victim and then offered an explanation for why it was he contacted tribal social services and the investigation picked up again. No, but the problem with it is I think the only fair way to read what he said was, you know, he went into what Judge Jones said congruently. He says, you know, that led him to recognize abuse. That's his term, right? These are red flags that help you recognize abuse. So he's giving an opinion that from these, you know, signs you can recognize abuse. That's an expert opinion, which he shouldn't have given, isn't it? I don't believe so. Again, in context. First, I think it's important to take a look at what Judge Jones actually ruled, and that's at SCR 4. What Judge Jones said is he can testify that he is a person with extensive experience in dealing with children and that this child demonstrated A, B, C, and D. Then his testimony at trial, and this is all at SCR 8.5. No, but he said he will not be allowed to state that this is indicative of sexual abuse. What's the difference, you know, between, you know, of something being indicative of sexual abuse and something that helps you recognize sexual abuse? Isn't that the same thing? I don't believe it. What's the difference? What Mr. Schimel testified to was not that. What Mr. Schimel testified to, if you look at the... He says I have received training in recognizing sexual abuse. That's why I pay attention to these red flags. The quotation is I've received some training in kind of understanding or recognizing abuse within our children. Right. He never says sexual abuse. Well, were they talking about some other kind of abuse at the trial? Does that make it okay because he didn't say sexual? I don't believe it makes it okay because he didn't say sexual. I think it is consistent with Judge Jones's ruling that he explained that he had training and that he explained what he observed about the victim. So if the judge says you can't say that this is indicative of sexual abuse, it's okay if he says, well, it's indicative of abuse. Is that what you're saying? Is that your argument? He didn't. Mr. Schimel never testified that what he observed was indicative of abuse. What he said was here's what I saw. And then he was asked, well, then what did you do with that? And he says I contacted tribal social services both because of what I saw and because of the training that I had. Judge Jones, in refusing to strike that testimony, ruled that that was consistent with his prior motion. And the question is was that ruling erroneous? I don't believe it was. I believe Judge Jones faithfully applied his prior ruling on the motion in limine. And I certainly don't believe it was an abuse of discretion for him to allow that testimony in. We do agree it's a closed question. I would agree that Mr. Schimel did not directly answer the question that was posed to him. I agree it would have been preferable had he done so. But I do not believe that it violated either the letter or the spirit of Judge Jones's pretrial ruling. And that's what Judge Jones concluded. That's why he didn't sustain the objection. He allowed it in. And I don't think you can hold that that was an abuse of discretion. There's no question this was a trial about sexual abuse. There's also no question that it was appropriate for Mr. Schimel to testify about what concerns, what was going on with her that prompted him to then have the investigation start up again. That's why we have this gap from the time when she's interviewed and she's 8 years old and she's interviewed again when she's 11. That's because she never stepped forward. She never came forward and said, hey, he's bugging me again. It took these people seeking her out to find out what was going on with her. And that was an important piece of this trial that the jury needed to hear. Mr. Schimel didn't testify to anything that was inaccurate or inappropriate. I'd like to turn now to the statement that the prosecutor made during his closing argument. And, again, this is another one of those issues where I think it's vitally important to keep what has been challenged in context. I've quoted it to you in full. It's at SCR page 348. Mr. Williams, during the course of his closing argument, was urging the jury to disregard testimony that they'd heard from a defense expert that there are no such things as red flags of sexual abuse. The defense expert got on the stand. She was asked, is the fact that the person suddenly stops eating, the fact that they're more physically affectionate, the fact that their grades slip, their attendance go down, all of these things, that that's not indicative of potential abuse? And she said no. The prosecutor in his closing argument was entitled to, it's his job, to urge the jury to draw reasonable inferences from the evidence and to disregard evidence that is simply defies common sense. And that was what he was doing. Well, what is the evidence that these are indicative of sexual abuse? I'm sorry? What is the evidence that supports that statement that the prosecutor made? You said he's entitled to argue the evidence. What is the evidence? What's been challenged that the prosecutor stated was that every school teacher knows that these are red flags. And what's the evidence that supports that? There was no evidence about what school teachers know.  I'm sorry? He's not arguing the evidence. He's arguing outside the record because there is nothing about every school teacher knows. What he was arguing was for the jury to use their common sense. And no, he wasn't saying, look, I'm a school teacher, I know this. Well, we know what he said. As you said, you caught it right in your brief. He said every school teacher knows that what this expert said is gibberish. That's what he said. Right. And I think his statement taken in context is any person with any common sense knows that these are signs of trouble. These are signs that at least should prompt inquiry. That's not his argument. He says any school teacher knows this expert is, you know, full of baloney. That's what he said. Well, and I think the same. There's not a single, you know, statement by any school teacher to that effect. That's true. And we did not submit any expert testimony on what school teachers did or did not know. The jury knew that, too. Well, you didn't submit any expert testimony on, you know, what are signs of sexual abuse either, did you? No, we didn't. Right. So this expert testimony stands uncontradicted and, you know, and maybe it's a weakness in the evidence. But obviously, you know, the government lawyer is trying to deflate that lack of evidence by going outside the record. And I would respectfully suggest what the prosecutor here was doing was urging the jury to accept that expert's testimony. I agree with that. And the trial judge here, this is at SCR 340, told the jury that the arguments of the lawyers are not evidence. The jury is presumed to follow those instructions. They knew that anything that Mr. Williams or the defendant's trial lawyer said in their closing argument was not evidence.  And the prosecutor was entitled and it was appropriate for him to tell the jury that in his mind they should reject that defense expert testimony. If I may just, with my last few minutes, address the sufficiency of the evidence claim. Here, I agree with Mr. Levine. This is a case of he said versus she said. That's absolutely typical for cases of this kind. Sexual abuse is not the type of crime in which there are usually witnesses. This case is no different. It took place in the afternoon when the victim's grandmother wasn't home. It took place in her bedroom. Her story about the key elements of the abuse remained constant over the years. When she was eight years old, she said, he touched me. He touched usually the outside of my clothes. He touched my chest. He touched the top part of my vaginal area. She called it a china when she was eight. She said the same thing in 2002 when she was interviewed again. She said the same thing to the nurse who conducted the physical examination. And she said the same thing at trial. The jury was entitled to look at both of these witnesses, to look at the victim, to hear her, and to look at the defendant and hear him and draw their own conclusions. There was more than sufficient evidence in this case to sustain the conviction. Unless there are any further questions, I'll submit. Thank you very much. Mr. Levine, you have your remaining time. Your Honors, I'm not arguing that a district judge can never admit a prior conviction for simple possession. I'm sure that on appropriate cases he can. I'm saying in this particular case, he bruised his discretion for the reasons I've already given. Mr. Schimel's testimony, I think Judge Tsushima has argued the case far better than I could. I think he's adequately put. He's a very able lawyer. I know. So I'm just going to leave that. As to the error in closing argument, Your Honor, it's black letter law that you can't argue outside the record. That was done here. Is it? Well, what about her argument that, you know, just sort of in a metaphorical way, stating what common sense amounts to? Well, it's beyond common sense to say that every school teacher knows what the signs of sexual abuse are. First of all, it's absolutely false. Every school teacher does not know. And the testimony in the record is from Dr. Okla, a well-recognized professional psychologist who says there are no signs of sexual abuse. The symptoms described by my learned counsel could fit half the adolescent girls and certainly fit my — there's no abuse, let me put it that way. That's why there's no signs. Absent physical evidence, you just can't tell from failing grades and marijuana use and all this. That's nonsense. So for the government to get up and say every school teacher knows that this is a sign of sexual abuse is really prejudicial misconduct outside the record, and it hurts deeply because the case is so close. Thank you very much, Your Honor. Thank you both for your argument. The case is submitted. And we will now hear argument in Oregon Natural Desert Association v. United States Forest Service. Thank you.
judges: Thompson, Tashima, Smith